## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GODDARD SYSTEMS, INC.
1016 W. Ninth Avenue
King of Prussia, Pennsylvania 19406

   Plaintiff

  v.

MAZHAR C. HUSSAIN CHUGHTAI
7219 White House Drive
Springfield, Virginia 22153

and

FAREEDA MAZUR CHUGHTAI
7219 White House Drive
Springfield, Virginia 22153

and

EDUCATION CONSULTANTS OF
VIRGINIA INC.
7219 White House Drive
Springfield, Virginia 22153

and

ZFC OF VIRGINIA, LLC
8509 Barrett Drive
Manassas, Virginia 22079

and

FARHAN CHUGHTAI
7219 White House Drive
Springfield, Virginia 22153

and

NAUREEN R. MALIK
25273 Talent Street
Chantilly, Virginia 20152

   Defendants.

Civil No. _____

**JURY TRIAL NOT DEMANDED**

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

### THE PARTIES

1. Plaintiff Goddard Systems, Inc. ("GSI") is a Pennsylvania corporation with its principal place of business at 1016 West Ninth Avenue, King of Prussia, Pennsylvania 19406.

2. On information and belief, Defendant Mazhar C. Hussain Chughtai ("Mazhar Chughtai") is an adult individual and a resident of the State of Virginia with a home address of 7219 White House Drive, Springfield, Virginia 22153.

3. Upon information and belief, Defendant Fareeda Mazar Chughtai ("Fareeda Chughtai") is an adult individual, a resident of the State of Virginia with a home address of 7219 White House Drive, Springfield, Virginia 22153, and is married to Mazhar Chughtai. Mazhar Chughtai and Fareeda Chughtai are sometimes referred to collectively hereinafter as the "Chughtai Defendants."

4. As set forth below, the Chughtai Defendants own and/or operate, with other persons, a Goddard School preschool in Leesburg, Virginia under a written franchise agreement with GSI and formerly owned and operated a franchised Goddard School preschool in Waldorf, Maryland under a different franchise agreement with GSI.

5. Defendant Educational Consultants of Virginia Inc. ("Educational Consultants") is a Virginia corporation with a registered address of 7219 White House Drive, Springfield, Virginia 22153, which is also the Chughtai Defendants' home address. On information and belief, Education Consultants is owned and/or controlled by Mazhar Chughtai, directly or indirectly, and/or in connection with (i) Farhan Chughtai, who is, on information and belief, the twenty-three (23) year old son of the Chughtai Defendants, and (ii) Naureen Rizwan Malik, who is Mazhar Chughtai's sister.

2

6. On information and belief, Defendant ZFC of Virginia, LLC ("ZFC") is a Virginia limited liability company that was formed by and is owned and controlled by Mazhar Chughtai and/or Fareeda Chughtai.

7. On information and belief, Defendant Farhan Chughtai ("Farhan Chughtai") is an adult individual, a resident of the State of Virginia with a home address of 7219 White House Drive, Springfield, Virginia 22153, and is the twenty-three (23) year old son of the Chughtai Defendants.

8. On information and belief, Defendant Naureen Rizwan Malik ("Naureen Malik") is an adult individual, a resident of the State of Virginia with a home address of 25273 Talent Street, Chantilly, Virginia 20152, and is Mazhar Chughtai's sister.

9. On information and belief, the Chughtai Defendants, Farhan Chughtai, Naureen Malik and, after their formation more recently, Education Consultants and ZFC have conspired, planned and engaged in a fraudulent scheme to establish, develop, open and operate at least one competing "Primrose School" child daycare or preschool learning center or business at, among other places, 8509 Barrett Drive, Manassas, VA 20109, all in express contravention and breach of the Chughtai Defendants' contractual obligations and covenants to GSI and in violation of this Court's Order of January 13, 2011.

10. On information and belief, Mazhar Chughtai and/or Fareeda Chughtai own and control, in whole or in part, directly or indirectly, Educational Consultants and ZFC. In the alternative, Mazhar Chughtai and/or Fareeda Chughtai, directly or indirectly, own, maintain, engage in, are employed by, finance and/or otherwise have an interest in Educational Consultants and ZFC.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are residents of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants' conduct injured GSI in this judicial district.  Among other things, Defendants' acts of misappropriation and unfair competition of things belonging to GSI as described below, as a matter of law, have their fictional situs and have caused damage in this district.

13.    Jurisdiction and venue are also proper in this court under the terms of:  (a) the former Franchise Agreement dated August 16, 2001 for the Goddard School franchise located in Waldorf, Maryland (*see* Exhibit 1, ¶ 23B); (b) a Settlement Agreement dated October 12, 2010 for the Goddard School franchise located in Waldorf, Maryland (*see* Exhibit 2, ¶ 22); (c) an applicable Termination of Franchise Agreement dated November 30, 2010 for the Goddard School franchise located in Waldorf, Maryland (*see* Exhibit 3, ¶ 9); (d) a Consent Order previously entered by this Court on January 13, 2011 in favor of GSI and against the Chughtai Defendants (*see* Exhibit 4); and (e) the applicable Franchise Agreement dated January 29, 2010 for the Goddard School franchise located in Leesburg, Virginia (*see* Exhibit 5, ¶ 23B).

## BACKGROUND

14.    GSI is the franchisor of THE GODDARD SCHOOL® businesses ("Goddard Schools"), which specialize in offering to the public preschool early education programs for children.

15.    Through years of experience, GSI has developed an operating system consisting of (among other things) specially designed standards and specifications, business information, curricula, advertising and marketing materials, identification schemes, training programs, management programs, interior and exterior accessories, and GSI-approved equipment and equipment layouts (the "Goddard System").

16.    GSI is also the owner of all of the right, title and interest in certain trade names, trademarks and service marks, including THE GODDARD SCHOOL® and other related marks (the "Marks"), which are utilized in connection with the Goddard System and in the operation of Goddard Schools.

17.    As part of the Goddard System, GSI has developed proprietary know-how, trade secrets and unique and successful methods of early childhood education, and has developed a unique, uniform system relating to the operation of franchised Goddard Schools.  Distinguishing characteristics of the franchised Goddard Schools include the Marks and the latest available data and information concerning market analysis, procurement of students, sales and merchandising methods, training of franchisees and center personnel, advertising techniques, record-keeping and business management.

18.    The Goddard System also includes a system of maintaining uniform high standards of quality, appearance and service in each of the Goddard Schools, an operations manual containing standards, specifications and procedures for operating a Goddard School, training and instruction in the operation of the franchise, reasonable individual business advice provided by the officers and other personnel of GSI, and assistance in promoting a franchised Goddard School business.

19. The business relationship between GSI and its franchisees is governed by the terms and conditions of a franchise agreement between GSI and each franchisee.

20. GSI franchisees are licensed under their respective franchise agreements to use the Marks and to operate under the Goddard System.

21. GSI and its franchisees have for many years spent substantial sums of money promoting the Goddard Schools. As a result of this extensive promotion, valuable goodwill has been developed for the Marks and for the schools, products and services that bear the Marks and thus identify GSI as their sponsor and source.

22. Most new Goddard School franchisees, including the Chughtai Defendants, have no prior experience in operating a child daycare or preschool learning center and would have little or no ability to do so efficiently, legally, and profitably without extensive training and assistance. This program is a critical factor driving entrepreneurs to become Goddard School franchisees rather than trying to open independent centers on their own.

23. GSI provides its franchisees with extensive training and hands-on assistance and support in every aspect of establishing and operating a child daycare and preschool learning center, including selecting an appropriate location for the center, opening and promoting a center, learning theories of early childhood development and curricula for different age groups, staffing the center and handling employment-related issues, increasing and maintaining enrollment, managing accounting functions, and ordering and purchasing equipment and supplies.

24. Each individual franchisee is given two to three weeks of training before his or her Goddard School opens. During and after the Goddard School has opened, and throughout the franchisees' relationship with GSI, GSI personnel provide additional training and support,

both in person and by telephone. GSI also provides its franchisees with its Confidential Operating Manual, Health & Safety Manual, Curriculum Manual and other materials, all of which contain GSI's trade secrets and confidential and proprietary information. GSI personnel conduct periodic visits to and inspections of each Goddard School, during which they offer guidance and advice to help franchisees resolve operational and other problems. GSI's franchise relations staff is available by telephone every working day to answer franchisees' questions and provide additional support and advice. GSI also sponsors seminars, conventions and regional meetings for its franchisees, during which GSI's trade secrets and confidential and proprietary information are disseminated and discussed.

25.    As partial consideration for GSI's agreement to disclose the Goddard System, all franchisees agree not to be involved in any way in any other child daycare, preschool learning center, or similar business anywhere during the term of their franchise agreement ("in-term covenant") and for a three-year period after the termination of their franchise agreement, within a ten-mile radius of their Goddard School or any other existing or proposed Goddard School ("post-term covenant").

26.    The in-term and post-term covenants – which are present in every franchise agreement that GSI has ever entered – are essential to maintaining the integrity of GSI's trade secrets and confidential and proprietary information and to protecting other franchisees from unfair competition from former franchisees.

## THE WALDORF FRANCHISE AGREEMENT

27.    On August 16, 2001, the Chughtai Defendants entered into a Franchise Agreement (the "Waldorf Franchise Agreement") with GSI's predecessor in interest, Carousel Systems, Inc. ("Carousel"), under which the Chughtai Defendants were granted the right and

undertook the obligation to operate The Goddard School at 7005 Saint Florian Drive, Waldorf, Maryland, 20603 (the "Waldorf School").   *See* Waldorf Franchise Agreement (attached as Exhibit 1).

28.     On August 16, 2001, the Chughtai Defendants then assigned their rights and obligations under the Franchise Agreement to Amerpak, Inc. ("Amerpak"), a Maryland corporation formed for their convenience of ownership, and Amerpak assumed all of the obligations under the Franchise Agreement (the "Waldorf Assignment").   Under the Waldorf Assignment, the Chughtai Defendants agreed to continue to be bound by the Franchise Agreement and to personally guarantee all of Amerpak's obligations under the Waldorf Franchise Agreement.

29.     Under the terms of the Waldorf Franchise Agreement and the Waldorf Assignment, the Chughtai Defendants and Amerpak received a limited license to use the Marks and Goddard operating system, to utilize GSI's latest available data and information concerning early childhood education, and to employ the unique system of operation developed and owned by GSI.

30.     Before signing the Waldorf Franchise Agreement, the Chughtai Defendants had no training or experience in opening, operating or promoting a child daycare or preschool learning program; everything that the Chughtai Defendants know on these subjects they learned from GSI or through their experience of operating the Waldorf Goddard School and, thereafter, another Goddard School located in Leesburg, Virginia, as described below.

31.     Mazhar Chughtai attended GSI's three-week training class at GSI's headquarters in King of Prussia, Pennsylvania in October 2001.   While at training, the Chughtai Defendants received their copy of GSI's Confidential Operating Manual.   A copy of the Receipt of

8

Confidential Operating Manual is attached to this Complaint as Exhibit 6. The Chughtai Defendants expressly acknowledged in the Waldorf Franchise Agreement that the information contained in the manual is confidential and agreed that they "shall use all reasonable efforts to maintain such information as secret and confidential" and would neither reproduce the materials in the manual or "make the same available to any unauthorized person." *See* Waldorf Franchise Agreement, (Ex. 1), at ¶ 8.

32.     On or about March 5, 2002, Carousel assigned all of its rights and obligations under the Waldorf Franchise Agreement to GSI and GSI assumed the obligations of Carousel under the Waldorf Franchise Agreement.

33.     The initial term of the Waldorf Franchise Agreement commenced on the date of the Waldorf Franchise Agreement (August 16, 2001) and was set to last for an initial term of 15 years (until August 16, 2016).

34.     The Waldorf Franchise Agreement provided that GSI was entitled to terminate the Waldorf Franchise Agreement immediately if the Chughtai Defendants or Amerpak:

a)     abandoned or ceased to do business at the School, lost their right to possession of the School, or forfeited the right to do or transact business in the jurisdiction where the School was located, *see* Waldorf Franchise Agreement (Ex. 1), ¶ 13.A(2);

b)     engaged in conduct that, in GSI's judgment, had or may affect the goodwill of the Marks, *see* Waldorf Franchise Agreement (Ex. 1), ¶ 13.A(3);

c)     purported to transfer any rights or obligations under the Waldorf Franchise Agreement to any third party without GSI's prior written consent, contrary to the terms of Paragraph 12 of the Waldorf Franchise Agreement, *see* Waldorf Franchise Agreement (Ex. 1), ¶ 13.A(4); and/or

9

d)      failed to comply with the covenants contained in Paragraph 16.A. of the Waldorf Franchise Agreement, requiring the Chughtai Defendants to devote full time, energy and efforts to the management and operation of the Waldorf School, *see* Waldorf Franchise Agreement (Ex. 1), ¶ 13.A(5).

## GSI TERMINATES THE WALDORF FRANCHISE AGREEMENT

35.     By letter dated September 14, 2010 (the "Waldorf Notice of Termination"), GSI notified the Chughtai Defendants and Amerpak that the Waldorf Franchise Agreement was terminated pursuant to Paragraphs 13.A.(2), (3), (4) and (5) of the Waldorf Franchise Agreement effective immediately on delivery of the Notice of Termination to the Chughtai Defendants and Amerpak.  Among the reasons cited in the Notice of Termination were (1) GSI's discovery of a Child Development Program License dated June 30, 2010 (the "2010 License") issued to Lilla 786, Inc. ("Lilla 786"), a corporation formed by Mazhar Chughtai's brother-in-law, Ejaz M. Chughtai ("Ejaz"), authorizing Lilla 786, which had no contractual relationship with GSI, to operate the Waldorf School as of June 30, 2010; and (2) a Center Compliance Agreement dated June 30, 2010 (the "2010 Compliance Agreement," attached as Exhibit 7) between Ejaz, agent for the operator Lilla 786, and the Office of Child Care of the Division of Early Childhood Development of the Maryland State Department of Education (the "OCC"), pursuant to which "Mazhar Chughtai will have no ownership involvement, or management of the Center or its operations." In the Notice of Termination, GSI also set forth and demanded compliance with the Chughtai Defendants' and Amerpak's post-termination obligations under the Waldorf Franchise Agreement.

36.     The 2010 Compliance Agreement states that Mazhar Chughtai and Amerpak violated an earlier 2009 Compliance Agreement when the Waldorf School again submitted

forged documents to the OCC, pertaining to an employee's experience in other child care facilities. *See* 2010 Compliance Agreement (Ex. 7), ¶ 3. The 2010 Compliance Agreement further states that "Mazhar Chughtai continued to allow [the Assistant Director] to authenticate, generate, prepare and authorize documents that were submitted to the OCC. The Center also submitted copies of documents that were not accurate, authentic and did not have original signatures." *Id.*

37.    The 2010 Compliance Agreement shows that Mazhar Chughtai and Amerpak were complicit in submitting falsified documents to the OCC. In the 2010 Compliance Agreement, the OCC agreed to issue a Child Care license to Ejaz and Lilla 786, and Ejaz and Lilla 786 agreed, among other things, to "ensure that Mazhar Chughtai will have no ownership, involvement, or management of the Center or its operations." 2010 Compliance Agreement (Ex. 7), ¶ 2.

38.    During their tenure as the franchisees/guarantors of the Waldorf School, Mazhar Chughtai and Amerpak submitted forged and inaccurate documents to the State of Maryland's Office of Child Care, lost their Maryland state license to operate an early child education center and thereby forfeited their ability to operate the franchise in accordance with the Waldorf Franchise Agreement. Rather than report those events to GSI, Mazhar Chughtai and Amerpak instead attempted to transfer unlawfully the Waldorf Franchise Agreement and the franchised business without GSI's approval or knowledge to a relative, Ejaz, and a related closely held operating company, Lilla 786. The purpose of the alleged transfer was to have Ejaz and Lilla 786 act as the Mazhar Chughtai's and Amerpak's agents and appear to the State of Maryland to be the authorized operators of the Waldorf School, all in order to satisfy the State of Maryland's licensing requirements and related requirement that Mazhar Chughtai have no further

involvement in the Waldorf School. At the exact same time, Ejaz and Lilla 786, the purported transferees of the franchise and Mazhar Chughtai's and Amerpak's agents in the straw-party transaction described above, were never approved as the franchisees of the Waldorf School or authorized to use THE GODDARD SCHOOL® trade name, trademarks, or operating system at or in connection with the Waldorf School.

39.     On September 15, 2010, GSI filed a Complaint (the "Complaint") to commence a civil action in the United States District Court for the Eastern District of Pennsylvania, entitled *Goddard Systems, Inc. v. Amerpak, Inc., Mazhar C. Hussain Chughtai, Fareeda Mazur Chughtai, Ejaz M. Chughtai, and Lilla 786, Inc.*, assigned Civil Action No. 2:10-cv-04698-CDJ (the "Waldorf Action"), to, among other things, enforce the termination of the Waldorf Franchise Agreement and the Chughtai Defendants' and Amerpak's post-termination obligations.

40.     GSI, the Chughtai Defendants, Amerpak, Ejaz M. Chughtai, and Lilla 786 entered into a Settlement Agreement dated October 12, 2010 (the "Settlement Agreement"). Under the terms of the Settlement Agreement, GSI conditionally reinstated the Waldorf Franchise Agreement, for the purpose of either allowing the Waldorf School to be sold or, if no such sale could be accomplished promptly, an orderly closure of the Waldorf School. In addition, GSI's affiliate, GSI Preschools, Inc., was provided with the rights to step-in and operate the Waldorf School, at the franchisees' expense. The Settlement Agreement otherwise outlined the basic terms of the resolution of any disputes concerning the termination of the Waldorf Franchise Agreement, including the parties' agreement to enter into a Consent Judgment, the provisions of which were incorporated into the Settlement Agreement by reference and were to remain in effect according to their terms, and the disposition of the Waldorf School. *See* Settlement Agreement (attached as Exhibit 2).

41.     By First Amendment to Settlement Agreement dated November 4, 2010, GSI, the Chughtai Defendants, Amerpak, Ejaz M. Chughtai, and Lilla 786 acknowledged and agreed that the Consent Judgment described in Section 5 of the Settlement Agreement was not executed simultaneously with the Settlement Agreement as contemplated in Section 5 because of the need to serve the Complaint in the Waldorf Action (as defined in the Settlement Agreement) on the defendants named in the Complaint, and confirmed their agreement and obligation to enter into a Consent Judgment pursuant to Section 5 of the Settlement Agreement after proof of service was completed and acknowledged by the Court. *See* First Amendment to Settlement Agreement (attached as Exhibit 8).

42.     On or about November 30, 2010, in connection with the Settlement Agreement, as amended, Mazhar Chughtai, Amerpak and GSI executed a Termination of Franchise Agreement (the "Waldorf Termination Agreement"), a copy of which is attached as Exhibit 3.  Under the Waldorf Termination Agreement, Mazhar Chughtai and Amerpak agreed, among other things, to the following post-termination covenant (the "Waldorf Post-Term Covenant"):

> Mazhar Chughtai, Fareeda Chughtai and Amerpak, Inc. agree that for three (3) years from the date of this Agreement, none of them shall, either directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation: (a) divert or attempt to divert any business or customer of the School to any competitor, by direct or indirect inducement or otherwise; (b) do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with GSI's Proprietary Marks and/or the System as those terms are defined in the Franchise Agreement; (c) employ or seek to employ any person who is at that time employed by GSI or by any other franchisee of GSI, or otherwise directly or indirectly induce such person to leave their employment with GSI or any franchisee of GSI; or (d) own, maintain, engage in, be employed by, lease real estate to, finance, or have any interest in any child day care or preschool learning center or business at or within a radius of ten miles of (i) 7005 Saint Florian Drive, Waldorf, MD 20603; or (ii) any existing or proposed The Goddard School business, provided, however that this clause (ii) shall not apply to the operation of any other The Goddard School business under an effective franchise agreement with GSI.  Mazhar Chughtai, Fareeda Chughtai and Amerpak, Inc. acknowledge that their obligations under the

Franchise Agreement and this Agreement are independent of any non-competition covenants they may make in an asset purchase agreement or other agreement with the purchaser of the School. GSI may enforce the covenants contained in this Agreement and in the Franchise Agreement to their full extent, even if Mazhar Chughtai, Fareeda Chughtai and/or Amerpak, Inc. grant inconsistent or less strict covenants to a third party. To the extent that this paragraph is deemed unenforceable by a court of competent jurisdiction because of its scope, geographic area or length of time, but may be made enforceable by revisions in any of the foregoing, the parties agree that this provision shall be enforced to the fullest extent permissible. Franchisee further agrees not to identify itself or any other entity in which it is involved as a present or former GSI franchisee or as in any way presently or formerly affiliated with GSI, except Franchisee may identify itself as a present GSI franchisee with respect to any other The Goddard School business it operates under an effective franchise agreement with GSI. [Nothing in this Agreement prohibits Mazhar Chughtai, Fareeda Chughtai and Amerpak, Inc. from owning property and renting it to a third-party child day care or preschool learning center or business.]

Waldorf Termination Agreement at ¶ 3.

43.     Under the Waldorf Termination Agreement, Mazhar Chughtai and Amerpak also agreed that, in any action brought to enforce GSI's rights under the Waldorf Termination Agreement, GSI is entitled to recover, in addition to any other recovery, all reasonable attorneys', expert and investigative fees incurred in enforcing the terms of the Waldorf Termination Agreement. *See* Waldorf Termination Agreement (Ex. 3), ¶ 12.

44.     On January 6, 2011, GSI, the Chughtai Defendants, Amerpak, Ejaz M. Chughtai, and Lilla 786 agreed to a proposed form of Consent Judgment for Injunctive Relief (the "Consent Judgment"), which was entered as a Consent Judgment and Order by the Honorable Judge C. Darnell Jones II on October 13, 2011. *See* Consent Judgment, which is attached as Exhibit 4. Under the Consent Judgment:

(2)     all Defendants, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation, or limited liability company will not, for a period from the date of this Order and ending on the three-year period following the termination of the Franchise Agreement on November 30, 2013, divert or attempt to divert any business or customer of their former School to any competitor, by

14

direct or indirect inducement or otherwise, to do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the mark THE GODDARD SCHOOL® and the other trade names, service marks, and trademarks as designated by GSI as part of GSI's system relating to the establishment, development and operation of preschool early learning centers (the "System") or injurious or prejudicial to goodwill associated with the System;

(3)     all Defendants, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation, or limited liability company, will not employ or seek to employ any person who is at that time employed by GSI or by any other franchisee of GSI, or otherwise directly or indirectly induce such person to leave his or her employment with GSI or such GSI franchisee, for the three-year period following the termination of the Franchise Agreement ending on November 30, 2013;

(4)     all Defendants, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation, or limited liability company, will not own, maintain, engage in, be employed by, finance, or have any interest in any non-GSI licensed child day care or preschool learning center or business at 7005 Saint Florian Drive, Waldorf, Maryland 20603 or within a radius of ten miles of that location or any existing or proposed THE GODDARD SCHOOL® preschool, for the three-year period following the termination of the Franchise Agreement ending on November 30, 2013, provided this paragraph will not apply to the ownership of less than a five percent beneficial interest of the outstanding equity securities in any publicly held corporation.

* * *

(6)     all Defendants will not either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, communicate, divulge, or use for the benefit of any person, persons, partnership, association, corporation, or limited liability company, any trade secrets or confidential information communicated or disclosed to any Defendant by GSI.

Consent Judgment, (Ex. 4), ¶¶ 2 - 4 and 6.

45.     The Consent Judgment, and the Chughtai Defendants' duties and obligations thereunder, remain in full force and effect as of the date of this Complaint.

## THE LEESBURG FRANCHISE AGREEMENT

46.     On January 29, 2010, the Chughtai Defendants, along with Mahzar Chughtai's brother and sister-in-law, Mahboob R. Chaghtai and Anjum M. Chaghtai, entered into a Franchise Agreement and an amendment thereto of even date (collectively, the "Leesburg Franchise Agreement") with GSI, under which the Chughtai Defendants, Mahboob R. Chaghtai and Anjum M. Chaghtai were granted the right and undertook the obligation to operate The Goddard School preschool at 601 Tavistock Drive SE, Leesburg, Virginia, 20175 (the "Leesburg School"). *See* Leesburg Franchise Agreement (attached as Exhibit 5).

47.     On March 25, 2010, the Chughtai Defendants, Mahboob R. Chaghtai and Anjum M. Chaghtai assigned their rights and obligations under the Leesburg Franchise Agreement to Maqka, Inc. ("Maqka"), and Maqka assumed all of their obligations as franchisees under an Assignment and Assumption Agreement. *See* Leesburg Assignment and Assumption Agreement (the "Leesburg Assignment" attached as Exhibit 9).   Under the Leesburg Assignment, the Chughtai Defendants, Mahboob R. Chaghtai and Anjum M. Chaghtai agreed to continue to be bound by the Leesburg Franchise Agreement and to personally guarantee all of Maqka's obligations under the Leesburg Franchise Agreement. *See* Leesburg Assignment (Ex. 9), ¶ 3.

48.     Under the terms of the Leesburg Franchise Agreement and the Leesburg Assignment, the Chughtai Defendants, Mahboob R. Chaghtai, Anjum M. Chaghtai and Maqka (collectively, the "Leesburg Franchisees") received a limited license to use the Marks and Goddard operating system, to utilize GSI's latest available data and information concerning early childhood education, and to employ the unique system of operation developed and owned by GSI.

16

49.     The initial term of the Leesburg Franchise Agreement commenced on the date of the Leesburg Franchise Agreement (January 29, 2010) and was set to last for an initial term of 15 years (until January 29, 2025).

50.     In order to protect the goodwill and value of the Marks, the Leesburg Franchise Agreement requires the Leesburg Franchisees, including the Chughtai Defendants, to operate the School according to the operations manual, attend initial and continuing training, and devote full time, energy and efforts to the management and operation of the School. *See* Leesburg Franchise Agreement (Ex. 5), ¶¶ 6, 16.A.

51.     In the Leesburg Franchise Agreement, the Leesburg Franchisees, including the Chughtai Defendants, agreed to keep the Marks, the operating manual, and any trade secrets confidential, Leesburg Franchise Agreement (Ex. 5), ¶ 8 and 9, and not to "communicate, divulge or use [them] for the benefit of any other person, persons, partnership or corporation . . .." Leesburg Franchise Agreement (Ex. 5), ¶ 9.

52.     Indeed, under the Leesburg Franchise Agreement, the Leesburg Franchisees, including the Chughtai Defendants, agreed, among other things, not to disclose GSI's trade secrets and confidential and proprietary information (the "Leesburg Covenant of Confidentiality"):

> You [the Leesburg Franchisees, including the Chughtai Defendants] shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, association or corporation, any trade secrets or confidential information, knowledge, or know-how concerning the methods of operation of The Goddard School which may be communicated or disclosed to you, or of which you may be apprised, by virtue of your operation under the terms of this Agreement.

Leesburg Franchise Agreement (Ex. 5), ¶ 9.B.

53.    The Leesburg Franchise Agreement specifically identified the Confidential Operating Manual and other materials as secret and confidential:

> You [the Leesburg Franchisees, including the Chughtai Defendants] shall at all times treat the [Confidential Operating] Manual, any other manuals created for or approved for use in the operation of the franchised business, and the information contained therein as confidential, and shall use all reasonable efforts to maintain such information as secret and confidential. You shall not at any time, without [GSI's] prior written consent, copy, duplicate, record or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

Leesburg Franchise Agreement (Ex. 5), ¶ 9A.

54.    The Leesburg Franchisees, including the Chughtai Defendants, further agreed to the following covenant not to compete during the term of the Leesburg Franchise Agreement (the "Leesburg In-Term Covenant"):

> You [the Leesburg Franchisees, including the Chughtai Defendants] covenant that, during the term of this Agreement, except as otherwise approved in writing by [GSI], you shall not directly or indirectly, for yourself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation or other entity:
>
> (1) Divert or attempt to divert any business or customer of the business franchised under this Agreement to any competitor, by direct or indirect inducement or otherwise, to do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.
>
> (2) Employ or seek to employ any person who is at that time employed by [GSI] or by any of [GSI's franchisees], or otherwise directly or indirectly to induce such person to leave his or her employment.
>
> (3) Own, maintain, engage in, be employed by, finance or have any interest in any other child daycare or preschool learning center or business (other than a School under an effective Franchise Agreement with [GSI].

Leesburg Franchise Agreement (Ex. 5), ¶ 16B.

55.     The Leesburg Franchisees, including the Chughtai Defendants, also agreed that, for a three-year period after termination of the Leesburg Franchise Agreement, they would not, "either directly or indirectly, for [themselves] or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation or other entity:

> (1) Divert or attempt to divert any business or customer of the business franchised under this Agreement to any competitor, by direct or indirect inducement or otherwise, to do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System;
>
> (2) Employ or seek to employ any person who is at that time employed by [GSI] or by any of [GSI's] franchisees, or otherwise directly or indirectly to induce such person to leave his or her employment;
>
> (3) Own, maintain, engage in, be employed by, finance or have any interest in any other child daycare or preschool learning center or business at the premises of the School or within a radius of ten (10) miles of the School or any existing or proposed School (other than a School under an effective Franchise Agreement with [GSI]).

Leesburg Franchise Agreement (Ex. 5), ¶ 16(C) (the "Leesburg Post-Term Covenant").

56.     Under the Leesburg Franchise Agreement, the Leesburg Franchisees (including, the Chughtai Defendants) also agreed that, in any action brought to enforce GSI's rights under the Leesburg Franchise Agreement, GSI is entitled to recover, in addition to any other recovery, reasonable attorneys' fees together with court costs and expenses of litigation. *See* Leesburg Franchise Agreement (Ex. 5), ¶ 23.E.

### Defendants' Unlawful Scheme

57.     All Defendants have participated in a scheme (the "Scheme") to breach and otherwise violate the Chughtai Defendants' obligations under the Leesburg Franchise Agreement, the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment not to perform, directly or indirectly, any act injurious or prejudicial to the goodwill

associated with the Marks and the System, employ or seek to employ any person who is at that time employed by any GSI franchisee, or otherwise directly or indirectly to induce such person to leave his or her employment, and engage in the establishment, development and operation of a prohibited competing child daycare or preschool learning center concept and related business.

58.     On information and belief, in furtherance of the Scheme and with knowledge of GSI's contract rights and the Chughtai Defendants' contract duties and covenants, Mazhar Chughtai and/or Fareeda Chughtai approached, solicited, encouraged and induced Farhan Chughtai and Naureen Rizwan Malik and, after their formation more recently, Education Consultants and ZFC to ostensibly establish, develop, open and operate at least one "Primrose School" child daycare or preschool learning center or business located at 8509 Barrett Drive, Manassas, VA 20109 (the "Competing Primrose School"), all of which has and is continuing to occur during the term of the Leesburg Franchise Agreement and within the post-term and other covenant periods set forth, respectively, in the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

59.     On information and belief, and with knowledge of GSI's contract rights and the Chughtai Defendants' contract duties and covenants, Defendants have embarked on the Scheme in order to, among other things, mask Mazhar Chughtai's and/or Fareeda Chughtai's interest and participation in the Competing Primrose School center and/or business.

60.     On further information and belief, and with knowledge of the 2009 Compliance Agreement, the 2010 Compliance Agreement and the Waldorf Action, Defendants have embarked on the Scheme in order to, among other things, omit and otherwise avoid having to disclose to the Virginia Department of Social Services – Division of Licensing Programs (i) the existence of the 2009 and 2010 Compliance Agreements, (ii) the OCC's disciplinary actions vis-

a-vis Mahzar Chughtai with regard to the 2009 and 2010 Compliance Agreements, (iii) the existence of the Waldorf Action, and (iv) Mazhar Chughtai's ownership, interest, participation and involvement formerly in the Waldorf School and currently in the Competing Primrose School center and/or business, all in connection with the Commonwealth of Virginia's receipt and review of the Initial Application of Licensure for the Competing Primrose School, the Personal Qualifying Information of its straw and, but for the Scheme, actual owners and a Compliance Report from the OCC regarding the Waldorf School. A copy of the form of Initial Application of Licensure required to be filed for the Competing Primrose School is attached as Exhibit 10, the form of Personal Qualifying Information of its straw owners and, but for the Scheme, actual owners is attached as Exhibit 11, and the form of Compliance Report that the Commonwealth of Virginia would seek from the OCC regarding the Waldorf School, but for the Scheme, is attached as Exhibit 12.

61. In furtherance of the Scheme, Mazhar Chughtai has surreptitiously conspired, plotted and planned with the other Defendants to own, maintain, engage in, be employed by, finance and/or have an interest in the Competing Primrose School center and/or business, directly or indirectly, for himself or through, on behalf of, or in conjunction with other persons, corporations and entities (including without limitation, Farhan Chughtai, Naureen Rizwan Malik, and, after their formation more recently, Education Consultants and ZFC), all in express contravention and breach of the Chughtai Defendants' obligations and covenants under the Leesburg Franchise Agreement, the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

62. On information and belief, the Chughtai Defendants, directly or indirectly, for themselves or through, on behalf of, or in conjunction with other persons, corporations and

entities (including without limitation, Farhan Chughtai,  Naureen Rizwan Malik, Education Consultants and ZFC), own, maintain, engage in, finance, and/or otherwise have an interest in the Competing Primrose School center and/or business, all in violation of the Leesburg Franchise Agreement, the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

63.     Upon information and belief, the Chughtai Defendants' involvement with the Competing Primrose School center and/or business commenced during the term of the Leesburg Franchise Agreement in violation of the Leesburg In-Term Covenant, and within the post-term and other covenant periods set forth, respectively, in the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

64.     On information and belief, in anticipation of attempting to sell and transfer the Goddard franchise for the Leesburg School, and while the Chughtai Defendants were still Goddard School franchisees, the Chughtai Defendants directly financed, aided and assisted Farhan Chughtai,  Naureen Rizwan Malik, Education Consultants and ZFC in selecting, evaluating, conducting due diligence upon, financing and then developing the Primrose School franchise opportunity, the site for the Competing Primrose School center and the Competing Primrose School business, all in furtherance of the Scheme.

65.     At all times pertinent to this Complaint, the Competing Primrose School center has been owned by Mazhar Chughtai, directly or indirectly.  A Commercial Property Record Card for the site of the Competing Primrose School center, proving ownership by Mazhar Chughtai effective as of November 4, 2011 and, after a transfer by Mazhar Chughtai for his convenience of ownership and no consideration, by ZFC effective as of November 20, 2012 is attached as Exhibit 13.

66.     The registered agent for Education Consultants is listed in the public records as Naureen Rizwan Malik and the registered address is listed as 7219 White House Drive, Springfield, Virginia 22153, Mazhar Chughtai's and Fareeda Chughtai's home address.   On information and belief, Naureen Rizwan Malik does not reside at 7219 White House Drive, Springfield, Virginia 22153.   A copy of the public records information regarding Education Consultant's incorporation is attached as Exhibit 14.

67.     Naureen Rizwan Malik, Mazhar Chughtai's sister, is listed in the public records as an officer, director and registered agent of Education Consultants, albeit at the Chughtai Defendants' residential address.   Shakeela A. Chughtai,[1] another sister of Mazhar Chughtai, is listed in the public records as a director of Education Consultants.   A copy of the public records information regarding Education Consultant's officers/directors and principal officers from the Commonwealth of Virginia's State Corporation Commission is attached as Exhibit 15.

68.     On information and belief, Education Consultants is the nominal franchisee and owner of the franchise for the Competing Primrose School business and Farhan Chughtai and Naureen Rizwan Malik, through Education Consultants, are holding themselves out to the public as the nominal owners and operators of the Competing Primrose School franchised business.   A Permanent School Information Notification form and the Management Bios of the Primrose School of Manassas' Franchise Owners are attached as Exhibit 16.

69.     During early 2013, one or more of the Chughtai Defendants, directly or indirectly through ZFC and/or Education Consultants, employed or sought to employ Naureen Rizwan Malik, who was at that time employed by the Leesburg Franchisees as an Assistant Director

---

[1] In addition to being Mazhar Chughtai's sister, Shakeela A. Chughtai is the wife of Ejaz M. Chughtai, the unauthorized transferee of the Waldorf School business, who was a defendant in the Waldorf Action and who was a signatory to the Consent Order.

and/or or otherwise directly or indirectly induced Naureen Rizwan Malik to leave her employment and arranged or facilitated her employment or nominal ownership role with the Competing Primrose School business, all in violation of the Leesburg In-Term Covenant, and the post-term and other covenants set forth, respectively, in the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

70.     On information and belief, Defendants Education Consultants and ZFC (and their respective nominal shareholders, incorporators, members, officers and employees, including, without limitation, Farhan Chughtai and Naureen Rizwan Malik) would have been unable to enter into the contracts required to finance, acquire, develop, open and operate the Competing Primrose School center and/or business or to perform their obligations thereunder without the credit and assistance, financial, business advice or otherwise, provided by Mazhar Chughtai and/or Fareeda Chughtai.

71.     On information and belief, Farhan Chughtai and Naureen Rizwan Malik are acting as figureheads or straw persons for Mazhar Chughtai and/or Fareeda Chughtai to mask the Chughtai Defendants' interests in and ownership and/or control of the Competing Primrose School center and/or business.

72.     On information and belief, Farhan Chughtai and Naureen Rizwan Malik are acting as the servants and/or agents of Mazhar Chughtai and/or Fareeda Chughtai and otherwise are in collusion and combination with Mazhar Chughtai and/or Fareeda Chughtai with respect to the Competing Primrose School center and/or business.

73.     Farhan Chughtai and Naureen Rizwan Malik have benefitted and, but for the grant of the relief requested herein, will continue to benefit from the Chughtai Defendants'

relationship with the Competing Primrose School center and/or business and therefore must abide by the same restrictive covenants agreed to by the Chughtai Defendants.

74.     The Competing Primrose School center and business are within a ten-mile radius of another existing Goddard School.

75.     The Chughtai Defendants' involvement with the Competing Primrose School center and business commenced during the term of the Leesburg Franchise Agreement and within the three (3) year post-term and other covenant periods set forth, respectively, in the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment, in violation of the covenants therein.

76.     Upon information and belief, the Chughtai Defendants' involvement with the Competing Primrose School has entailed, and will continue to entail, use and disclosure of the Goddard System – the confidential and proprietary information, trade secrets, knowledge and know-how that the Chughtai Defendants learned from GSI, including with regard to site selection and development.  As a practical matter, the Chughtai Defendants have no ability to be involved in the operation of the Competing Primrose School center and/or business without using elements of the Goddard System, and thereby disclosing GSI's trade secrets and other confidential and proprietary information, in violation of the Leesburg Covenant of Confidentiality, the Leesburg In-Term Covenant, the Leesburg Franchise Agreement, the Settlement Agreement, the Termination of Franchise Agreement, the Consent Judgment, the Uniform Trade Secrets Act and the common law.

77.     On information and belief, Defendants Education Consultants and ZFC (and their respective nominal and/or straw party shareholders, incorporators, members, officers and employees, including, without limitation Farhan Chughtai and Naureen Rizwan Malik) knew or

should have known and, to this day, know or should know that the Chughtai Defendants were bound by and breached the covenants referenced above and otherwise misappropriated the information that the Chughtai Defendants have imparted to them regarding the location, establishment, financing, opening, operation, marketing, advertising and promotion of a preschool learning center, and that this information constitutes GSI's protectable trade secrets, confidential information and copyrighted materials.  In connection with the Scheme, all Defendants (and their respective nominal and/or straw party shareholders, incorporators, members, officers, servants, agents and employees) have unlawfully and improperly received, utilized and benefited from GSI's trade secrets and other confidential and proprietary information in maintaining, engaging in, financing, and/or otherwise having an interest in the Competing Primrose School center and/or business, all for and to their own pecuniary benefit.

78.     On information and belief, Defendant Mazhar Chughtai has been and remains actively engaged in, and otherwise is holding himself out orally and in writing as the informal or real owner in interest and/or "developer" of the Competing Primrose School center and/or business and as someone who intends to "develop" additional Primrose Schools.

79.     The Chughtai Defendants' involvement with the Competing Primrose School center and/or business has extended up to and including today, in violation of the Leesburg In-Term Covenant, the Leesburg Franchise Agreement, the Settlement Agreement, the Termination of Franchise Agreement and the Consent Judgment.

80.     On information and belief, the Chughtai Defendants are utilizing the Scheme to, among other things, avoid their restrictive covenants and this Court's Order, avoid paying GSI initial franchise fees and on-going royalty fees which would be required if the Chughtai Defendants purchased and established Goddard School franchises instead of competing Primrose

Schools, and to divert such income and profits from GSI.  Viewed over the typical fifteen (15) year Goddard School Franchise Agreement, GSI is being damaged by, and could lose millions of dollars because of, the Scheme.

81.     On information and belief, Defendants intend to establish, open, own and engage in additional competing Primrose School centers and/or businesses in violation and breach of the Chughtai Defendants' contractual obligations and covenants to GSI.  Should the requested relief not issue or Defendants otherwise not cease and desist from their unlawful complained of conduct, GSI will be further damaged on the opening of each additional competing Primrose School center and/or business.

82.     GSI has fully performed or otherwise properly discharged all of its contractual duties to the Chughtai Defendants.

## COUNT I

## BREACH OF CONTRACT – IN-TERM COVENANT NOT TO COMPETE UNDER THE LEESBURG FRANCHISE AGREEMENT
### (By GSI Against the Chughtai Defendants)

83.     GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

84.     During the term of the Leesburg Franchise Agreement, the Chughtai Defendants breached their obligations under the Leesburg Franchise Agreement by, directly or indirectly, (a) diverting or attempting to divert any business or customer of the Leesburg Goddard School to any competitor, (b) employing or seeking to employ Naureen Rizwan Malik and perhaps others who were at that time employed by Leesburg Franchisees, and/or or otherwise inducing Naureen Rizwan Malik and perhaps others to leave her employment and arranging or facilitating her employment or nominal ownership role with the Competing Primrose School, (c) doing or

performing acts injurious or prejudicial to the goodwill associated with the Marks and Goddard System, and (d) owning, maintaining, engaging in, being employed by, financing, or having any interest in any child care or preschool learning center or similar business.

85.     For all these same reasons, the Chughtai Defendants have breached and are liable under the Leesburg Assignment and Assumption Agreement.

86.     The Chughtai Defendants' conduct as set forth above will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees.  The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

87.     GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships, and lost profits cannot be compensated in monetary damages.

88.     The Chughtai Defendants are contractually obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by GSI in enforcing the Leesburg Franchise Agreement, the Leesburg Assignment and Assumption Agreement and any other agreements with the Chughtai Defendants.

## COUNT II

### ACTION FOR CONTEMPT, FINES, PENALTIES AND SANCTIONS – VIOLATION OF POST-TERM COVENANT NOT TO COMPETE UNDER CONSENT JUDGMENT
### (By GSI Against the Chughtai Defendants)

89.     GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

90.     At all times pertinent to this Complaint, the Chughtai Defendants have had actual and constructive knowledge of the terms and conditions of the Consent Judgment.

91.     Notwithstanding the entry of the Consent Judgment, and the Chughtai Defendants' actual and constructive knowledge of the terms and conditions of the Consent Judgment, the Chughtai Defendants have disobeyed and otherwise violated their post-termination obligations under the Consent Judgment by, directly or indirectly, (a) diverting or attempting to divert any business or customer of the Leesburg Goddard School to any competitor, (b) employing or seeking to employ at least Naureen Rizwan Malik and perhaps others, who was at that time employed by the Leesburg Franchisees, and/or or otherwise inducing Naureen Rizwan Malik and perhaps others to leave her employment and arranging or facilitating her employment or nominal ownership role with the Competing Primrose School, (c) doing or performing acts injurious or prejudicial to the goodwill associated with the Marks and Goddard System, and (d) owning, maintaining, engaging in, being employed by, financing, or having any interest in any child care or preschool learning center and/or business within a ten-mile radius of another existing or proposed Goddard School, during the time periods prohibited under the Consent Judgment.

92.     The Chughtai Defendants are and should be adjudged to be in contempt of the Court's Consent Judgment.

93.     Absent judicial relief in the form requested, the threat of further disobedience by the Chughtai Defendants is virtually certain.

94.     GSI has suffered injury due to the Chughtai Defendants' failure to comply with the Consent Judgment.

95.     The Chughtai Defendants' conduct as set forth above will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees.  The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

96.     GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships, and lost profits cannot be compensated in monetary damages.

97.     GSI is entitled to, among other things, an order compelling compliance, as well as sanctions compensating for loss due to noncompliance.

98.     The Chughtai Defendants should be ordered and otherwise are contractually obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by GSI in enforcing the Consent Judgment.

## COUNT III

### BREACH OF CONTRACT – POST-TERM COVENANT NOT TO COMPETE UNDER SETTLEMENT AGREEMENT AND CONSENT JUDGMENT
(By GSI Against the Chughtai Defendants)

99.     GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

100.    The Chughtai Defendants have breached and otherwise violated their post-termination obligations under the Settlement Agreement and Consent Judgment by, directly or indirectly, (a) diverting or attempting to divert any business or customer of the Leesburg Goddard School to any competitor, (b) employing or seeking to employ at least Naureen Rizwan Malik and perhaps others, who was at that time employed by the Leesburg Franchisees, and/or or

otherwise inducing Naureen Rizwan Malik and perhaps others to leave her employment and arranging or facilitating her employment or nominal ownership role with the Competing Primrose School, (c) doing or performing acts injurious or prejudicial to the goodwill associated with the Marks and Goddard System, and (d) owning, maintaining, engaging in, being employed by, financing, or having any interest in any child care or preschool learning center and/or business within a ten-mile radius of another existing or proposed Goddard School, during the time periods prohibited under the Settlement Agreement and the Consent Judgment.

101.   The Chughtai Defendants' conduct as set forth above will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees.  The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

102.   GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships, and lost profits cannot be compensated in monetary damages.

103.   The Chughtai Defendants are contractually obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by GSI in enforcing the Settlement Agreement and the Consent Judgment and any other agreements with the Chughtai Defendants.

## COUNT IV

### BREACH OF CONTRACT – POST-TERM COVENANT NOT TO COMPETE UNDER THE WALDORF TERMINATION AGREEMENT (By GSI Against Mazhar Chughtai)

104.   GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

105.    Defendant Mazhar Chughtai breached his post-termination obligations under the Waldorf Termination Agreement by, directly or indirectly (a) diverting or attempting to divert any business or customer of the Leesburg Goddard School to any competitor, (b) employing or seeking to employ at least Naureen Rizwan Malik and perhaps others, who was at that time was employed by the Leesburg Franchisees, and/or or otherwise inducing Naureen Rizwan Malik and perhaps others to leave her employment and arranging or facilitating her employment or nominal ownership role with the Competing Primrose School, (c) doing or performing acts injurious or prejudicial to the goodwill associated with the Marks and Goddard System, and (d) owning, maintaining, engaging in, being employed by, financing, or having any interest in any child care or preschool learning center and/or business within a ten-mile radius of another existing or proposed Goddard School, during the time periods prohibited under the Waldorf Termination Agreement.

106.    Mazhar Chughtai's conduct as set forth above will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees.  The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

107.    GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships, and lost profits cannot be compensated in monetary damages.

108.    Mazhar Chughtai is contractually obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by GSI in enforcing the Waldorf Termination Agreement and any other agreements with the Chughtai Defendants.

## COUNT V

### BREACH OF CONTRACT – COVENANT OF GOOD FAITH AND FAIR DEALING
### (By GSI Against the Chughtai Defendants)

109.    GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

110.    The Chughtai Defendants' conduct as set forth above deprives GSI of the benefit of its bargain under the Leesburg Franchise Agreement, the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

111.    The Chughtai Defendants' actions in furtherance of the Scheme and operation as set forth above will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees.  The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

112.    GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships and lost profits cannot be compensated in monetary damages.

113.    GSI has suffered and will continue to suffer damages as a result of the Chughtai Defendants' breach of the covenant of good faith and fair dealing, in an amount to be determined at trial.

### COUNT VI

### BREACH OF CONTRACT – COVENANT OF CONFIDENTIALITY
### (By GSI Against the Chughtai Defendants)

114.    GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

115.    The Chughtai Defendants' conduct as set forth above breached their obligation under the Leesburg Franchise Agreement during its term and thereafter not to "communicate, divulge, or use for the benefit of any other person, persons, partnership, association or corporation, any trade secrets or confidential information, knowledge, or know-how concerning the methods of operation of The Goddard School."

116.    As detailed above, the Chughtai Defendants breached the Leesburg Franchise Agreement by permitting Farhan Chughtai, Naureen Rizwan Malik, Education Consultants and ZFC to have access to, to use and/or to benefit from GSI's confidential operating system and information without authorization. *See* Leesburg Franchise Agreement (Exhibit 5), ¶ 9.

117.    GSI has suffered damages as a result of the Chughtai Defendants' breach of the Leesburg Covenant of Confidentiality, in an amount to be determined at trial.

118.    For all these same reasons, the Chughtai Defendants have breached and are liable under the Leesburg Assignment and Assumption Agreement, as well as the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

119.    The Chughtai Defendants are contractually obligated to pay all costs and expenses, including reasonable attorneys' fees, incurred by GSI in enforcing the Leesburg Franchise Agreement, the Leesburg Assignment and Assumption Agreement and any other agreements with the Chughtai Defendants, including the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

## COUNT VII

### CONSPIRACY
### (By GSI Against All Defendants)

120.    GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

121.   In furtherance of the Scheme as described above, Defendants have been and remain engaged in a conspiracy and course of conduct to break the Chughtai Defendants' various contractual promises and covenants to GSI, to mask the Chughtai Defendants' involvement in the Competing Primrose School, to compete directly with GSI and its authorized franchisees, to loot, siphon and steal GSI's trade secrets, proprietary information and other valuable assets, and to deprive GSI of significant actual and prospective revenue streams and profits, customer relationships, goodwill and additional market growth opportunities.

122.   On information and belief, the Scheme involving the Competing Primrose School was conceived and developed by the Chughtai Defendants during the term of the Leesburg Franchise Agreement and prior to the formation of the Education Consultants and ZFC, as fraudulent and deceptive business vehicles that would provide competitive goods and services to those of GSI and its authorized franchisees, compete against GSI and its authorized franchisees and siphon off significant confidential and proprietary information, customer relationships, goodwill and market growth opportunities from GSI and its authorized franchisees.

123.   Without the input, participation, and financial and other active support of the Chughtai Defendants, the Competing Primrose School would not exist, would not be a competitor of GSI and its authorized franchisees, would not provide goods and services similar (and competitive) to those provided by GSI and its authorized franchisees, and would not operate in GSI's and its authorized franchisees' line of business.

124.   It is believed and therefore alleged that the Chughtai Defendants (and their straw-party agents and servants) have aided, abetted and encouraged Education Consultants and ZFC to conceive, develop, establish and operate the Competing Primrose School.

125.   Defendants, acting in combination, misappropriated, converted, and/or otherwise improperly used GSI's trade secrets, proprietary information and other valuable assets.

126.   Defendants' actions have damaged GSI in ways, extents and amounts to be further ascertained.  In addition, Defendants' actions have irreparably harmed and will continue to irreparably harm GSI in ways and extents for which there is no adequate remedy at law.

**COUNT VIII**

**MISAPPROPRIATION OF TRADE SECRETS**
**(By GSI Against All Defendants)**

127.   GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

128.   Defendants' conduct as set forth above constitutes a misappropriation of GSI's trade secrets within the meaning of the Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301, *et seq.* ("UTSA").

129.   The Goddard System derives economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  The Goddard System is the subject of reasonable efforts to maintain its secrecy.

130.   Defendants' operation as set forth above will cause GSI irreparable harm through loss of its goodwill and relationship problems that are likely to be encountered with its other franchisees.  The damages that GSI will sustain and the potential deception and harm to the consuming public cannot be ascertained, nor can such harm be compensated for in monetary damages.

131.   GSI has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships and lost profits cannot be compensated in monetary damages.

132.   GSI has suffered and will continue to suffer damages as a result of Defendants' misappropriation of GSI's trade secrets, in an amount to be determined at trial.

133.   Defendants' misappropriation of GSI's trade secrets is willful and malicious within the meaning of the UTSA.

## COUNT IX

### UNFAIR COMPETITION
### (By GSI Against All Defendants)

134.   GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

135.   Defendants' conduct is a violation of the common law of unfair competition and is an unfair trade practice under the common law.

136.   GSI will suffer damages as a result of Defendants' conduct in an amount to be determined at trial.  In addition, Defendants' actions have irreparably harmed and will continue to irreparably harm GSI in ways and extents for which there is no adequate remedy at law.

## COUNT X

### TORTIOUS INTERFERENCE
### (By GSI Against Education Consultants of Virginia LLC, ZFC of Virginia, LLC, Farhan Chughtai and Naureen Rizwan Malik)

137.   GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

138.    The Chughtai Defendants owed and owe continuing contractual duties and obligations to GSI under the Leesburg Franchise Agreement, the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment as described above.

139.    On information and belief, Education Consultants and ZFC (and their straw-party incorporators, officers, directors, agents and members, including without limitation Farhan Chughtai and Naureen Rizwan Malik) knew and continue to know of the Chughtai Defendants' prior and continuing contractual duties and obligations under the Leesburg Franchise Agreement, the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment.

140.    By engaging in the conduct described above and with knowledge of the promises made by the Chughtai Defendants to GSI, Education Consultants and ZFC (and their straw-party incorporators, officers, directors, agents and members, including without limitation Farhan Chughtai and Naureen Rizwan Malik) have intentionally and by improper means tortiously interfered with the promises and covenants made by the Chughtai Defendants to GSI.

141.    The conduct of Education Consultants and ZFC (and their straw-party incorporators, officers, directors, agents and members, including without limitation Farhan Chughtai and Naureen Rizwan Malik) is willful, malicious, wanton, intentional, unprivileged and without justification or excuse, and it is and will be the direct and proximate cause of immediate and irreparable harm as well as money damages to GSI and unjust enrichment to Defendants.

## COUNT XI

### UNJUST ENRICHMENT
### (By GSI Against All Defendants)

142.    GSI incorporates each of the preceding paragraphs as if fully set forth in this paragraph.

143.   Defendants have benefited from their misappropriation and use of GSI's trade secrets, proprietary information, copyrighted information and other valuable assets.

144.   In equity and good conscience, Defendants should not have used GSI's trade secrets, proprietary information, copyrighted information and other valuable assets.

145.   Defendants unjustly have not compensated GSI for this benefit, to GSI's detriment.

146.   Defendants' actions have damaged GSI in ways, extents and amounts to be further ascertained. In addition, Defendants' actions have irreparably harmed and will continue to irreparably harm GSI in ways and extents for which there is no adequate remedy at law.

**WHEREFORE**, Plaintiff Goddard Systems, Inc. requests the following relief:

a.   An Order adjudging Defendants Mazhar Chughtai and Fareeda Chughtai in contempt for violating the Court's January 14, 2011 Consent Judgment, issuing a writ of assistance, imposing penalties and fines deemed appropriate by the Court until the Chughtai Defendants' compliance is secured, and awarding compensatory sanctions for the full amount of attorney's fees and costs that Goddard Systems, Inc. has incurred;

b.   Declaratory judgment that the involvement of Defendants Mazhar Chughtai, Fareeda Chughtai, Farhan Chughtai and/or Naureen Rizwan Malik in the Competing Primrose School, Education Consultants and/or ZFC violates the In-Term Covenant under the Leesburg Franchise Agreement, and violates the post-term covenants under the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment;

c.  Declaratory judgment that the involvement of Defendants Mazhar Chughtai, Fareeda Chughtai, Farhan Chughtai and/or Naureen Rizwan Malik in the Competing Primrose School, Education Consultants and/or ZFC violates the Leesburg Covenant of Confidentiality, and violates the confidentiality covenants under the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment;

d.  Declaratory judgment that the involvement of Defendants Mazhar Chughtai, Fareeda Chughtai, Farhan Chughtai and/or Naureen Rizwan Malik in the Competing Primrose School, Education Consultants and/or ZFC constitutes willful and malicious misappropriation of GSI's trade secrets in violation of the Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301 *et seq.*;

e.  A preliminary and permanent injunction enjoining Defendants Mazhar Chughtai and Fareeda Chughtai, their agents, servants, employees and attorneys, and all others in active concert or participation with either of them (including, without limitation, Educational Consultants of Virginia Inc., ZFC of Virginia, LLC and their respective straw-party incorporators, officers, directors, agents and members, including without limitation Farhan Chughtai, Naureen Rizwan Malik and Shakeela A. Chughtai), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from owning, maintaining, engaging in, being employed by, financing, or having any interest in the Competing Primrose School or any other child daycare or preschool learning center or similar business at or within a ten-mile radius of any other existing or proposed Goddard School (including, without

limitation, the Competing Primrose School located at 8509 Barrett Drive, Manassas, VA 20109) during the remaining term of the Leesburg Franchise Agreement, the remaining respective terms of the post-term covenants set forth in the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment or, as a result of Defendants' intentional and otherwise fraudulent acts of concealment, for a period of three years following the date on which Defendants Mazhar Chughtai and Fareeda Chughtai first cease to operate or have any other prohibited involvement in the Competing Primrose School, whichever is later;

f.    A preliminary and permanent injunction enjoining Defendants Mazhar Chughtai and Fareeda Chughtai, their agents, servants, employees and attorneys, and all others in active concert or participation with either of them (including, without limitation, Educational Consultants of Virginia Inc., ZFC of Virginia, LLC and their respective straw-party incorporators, officers, directors, agents and members, including without limitation Farhan Chughtai, Naureen Rizwan Malik and Shakeela A. Chughtai), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from communicating, divulging, or using for the benefit of any person, persons, partnership, association or corporation, any trade secrets or confidential information, knowledge or know-how communicated or disclosed to them by GSI;

g.    A preliminary and permanent injunction enjoining Defendants Mazhar Chughtai and Fareeda Chughtai, their agents, servants, employees and attorneys, and all

others in active concert or participation with either of them (including, without limitation, Educational Consultants of Virginia Inc., ZFC of Virginia, LLC and their respective straw-party incorporators, officers, directors, agents and members, including without limitation Farhan Chughtai, Naureen Rizwan Malik and Shakeela A. Chughtai), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from employing or seeking to employ any employee of GSI or any franchisee of GSI, during the remaining term of the Leesburg Franchise Agreement, the remaining respective terms of the post-term covenants set forth in the Settlement Agreement, the Waldorf Termination Agreement and the Consent Judgment or, as a result of Defendants' intentional and otherwise fraudulent acts of concealment, for a period of three years following the date on which Defendants Mazhar Chughtai and Fareeda Chughtai first cease to operate or have any other prohibited involvement in the Competing Primrose School, whichever is later;

h.  An injunction requiring Defendants Mazhar Chughtai and Fareeda Chughtai, their agents, servants, employees and attorneys, and all others in active concert or participation with either of them (including, without limitation, Educational Consultants of Virginia Inc., ZFC of Virginia, LLC and their respective straw-party incorporators, officers, directors, agents and members, including without limitation Farhan Chughtai, Naureen Rizwan Malik and Shakeela A. Chughtai), to surrender and otherwise turn over to GSI or its designated representative all originals and any copies of any part of GSI's Confidential Operating Manual,

Health & Safety Manual, Curriculum Manual, records, files, instructions, correspondence, marketing materials, curriculum and any other documents, materials or other things (including those in any electronic format) that embody or reflect any part of the Goddard System or GSI's trade secrets or confidential and proprietary information;

i.    Money damages attributable to Defendants' misappropriation of GSI's trade secrets, multiplied as provided in 12 Pa. C.S.A. § 5304(b);

j.    Money damages attributable to Defendants Mazhar Chughtai and Fareeda Chughtai's breaches of the Leesburg Franchise Agreement;

k.    Money damages attributable to Defendants Mazhar Chughtai and Fareeda Chughtai's breaches of the Settlement Agreement;

l.    Money damages attributable to Defendants Mazhar Chughtai and Fareeda Chughtai's breaches of the Consent Judgment;

m.    Compensatory damages awarded in favor of GSI and against all Defendants;

n.    Lost profits awarded in favor of GSI and against all Defendants;

o.    Exemplary damages awarded in favor of GSI and against all Defendants;

p.    Punitive damages awarded in favor of GSI and against all Defendants;

q.    An accounting by Defendants of the profits to which GSI may be entitled;

r.    Attorneys' fees, costs, expert fees and investigative fees incurred in connection

with this action;

s.      Pre-judgment and post-judgment interest; and

t.      Such other relief as this Court may deem proper.

Respectfully submitted,

**GODDARD SYSTEMS, INC.**

Dated:  July 29, 2013          By:  _Constantine Fournaris_
                                    Constantine T. Fournaris
                                    James A. Goniea
                                    WIGGIN AND DANA LLP
                                    Two Liberty Place
                                    50 S. 16th Street, 29th Floor
                                    Philadelphia, PA 19103
                                    215-988-8311
                                    cfournaris@wiggin.com
                                    *Attorneys for Plaintiff Goddard Systems, Inc.*

15595/1/2918994.1

**VERIFICATION**

I, ROBERT SCOPINICH, state as follows:

I am the Chief Financial Officer of Goddard Systems, Inc. (hereinafter referred to as "GSI"); that, as such, I am authorized to make this oath and verification; that, in my capacity as the Chief Financial Officer of GSI, I am a custodian for all of the books and records of GSI, and I am familiar with those books and records; that, in my capacity as the Chief Financial Officer of GSI, I am familiar with GSI's business operations, including its business dealings and its relationship with its franchisees generally and with Defendants Mazhar C. Hussain Chughtai and Fareeda Mazur Chughtai in particular; that I have read the Complaint filed by GSI in this matter dated July 29, 2013; that I know the contents thereof to be true of my own personal knowledge, except for those allegations made in the Complaint upon information and belief; and that, as to the allegations contained in the Complaint which are made upon information and belief, I believe them to be true.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 29, 2013.

_____
Robert Scopinich